# United States District Court

## For The District of Columbia

**UNDER SEAL**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | |
| **DANA E. MARSHALL**<br>DOB: April 13, 1955<br>DID:<br>P | CASE NUMBER: |
| (Name and Address of Defendant) | |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Between in or about ___(see below)___ in ___(see below)___ _____county, in the_____ District of __Columbia__ defendant(s) did, (Track Statutory Language of Offense)

Between on or about not later than July 24, 2007 and August 17, 2007, in the District of Columbia and elsewhere, defendant did conspire with others to induce a public official, directly and indirectly, to corruptly demand, seek, receive, accept and agree to receive and accept anything of value personally and for any other person and entity, in return for being induced to do and omit to do any act in violation of the official duty of such official or person.

in violation of Title ___18___ United States Code, Section(s) ___371 & 201___

I further state that I am __Andrew Sekela, Agent with Federal Bureau of Investigation__, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof: ☒ Yes   ☐ No

AUSA, Thomas Hibarger
Sworn to before me and subscribed in my presence,

Signature of Complainant
Andrew Sekela, Special Agent
Federal Bureau of Investigation

_____        at    ___Washington, D.C.___
Date                                         City and State

_____        _____
Name & Title of Judicial Officer              Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

1. Your affiant is a Special Agent of the Federal Bureau of Investigation (FBI) and has been so employed for approximately three and a half years. I am currently assigned to the Public Corruption Squad of the Washington, DC field office. I have training and experience in the enforcement of laws of the United States, including the preparation, presentation, and service of search warrants. My duties include investigation of various criminal allegations, including those involving government fraud and bribery of public officials.

2. This affidavit is written in support of an arrest warrant for Dana E. Marshall. I believe that there is probable cause to believe that Dana E. Marshall has committed violations of Title 18, United States Code, Sections 201 (Bribery of a Public Official) and 371 (Conspiracy to Commit Bribery of a Public Official).

3. This affidavit is based in part upon interviews, audio and visual surveillance, and other information gathered during the investigation. The information contained herein is based on my personal knowledge and experience, and information provided to me by other law enforcement personnel who have participated in the investigation described in this affidavit. This affidavit does not contain all of the information known to me regarding this investigation. Your affiant has included in this affidavit facts which he believes are sufficient to support a probable cause finding for the issuance of the requested warrant.

4. Allegations have been received that Corrections Officers (COs) at the District of Columbia Jail (DCJ) are engaging in illegal activity, specifically, the smuggling of contraband into the DCJ. Information has been obtained that indicates the subject COs are smuggling contraband ranging from food and cigarettes to marijuana, other narcotics, electronic devices, and even weapons into the DCJ.

5. Interviews of numerous inmates incarcerated in the DCJ indicate that CO Dana Marshall, a CO assigned to the Culinary Department on the 2:30 p.m. to 10:00 p.m. shift, is one of the jail officials responsible for smuggling contraband to inmates. Bringing contraband to inmates inside the DCJ is an act in violation of the official duty of a CO.

6. A Cooperating Witness (hereafter referred to as CW1) established a relationship with Marshall. CW1 knew Marshall from previous dealings in which Marshall smuggled in contraband for CW1 while CW1 was incarcerated. Subsequently, CW1 obtained the telephone number for Sheri Adams, who was purported to serve as a "middle-man" for Marshall. According to CW1, Adams' routine was to meet with an inmate's contact outside the DCJ. The contact would then provide cash (which functioned as a bribe payment to Marshall and/or Adams) to Adams. Additionally, the contact would provide contraband, such as cash, drugs, electronics, or other items, to Adams. After meeting with the inmate's contact, Adams would meet with Marshall and deliver some portion of the cash and the contraband to him. Marshall would then smuggle the contraband into the DCJ and deliver it to the inmate.

7. Marshall worked in the Culinary Department. The most common method of delivery Marshall used was to hide contraband in a special diet tray. Marshall then provided the tray to an inmate assigned to work on the Culinary Department detail. The inmate actually delivered the tray to the designated inmate.

8. To facilitate the collection of evidence, an FBI Undercover Employee (UCE) was introduced to CW1 and posed as CW1's contact outside of the DCJ. Prior to the introduction, CW1 spoke with both Marshall and Adams. CW1 told Marshall and Adams that UCE was a friend of CW1's, and that UCE would be providing cash and other items of value to Marshall and/or Adams in return for Marshall and Adams smuggling contraband to CW1 inside the DCJ.

9. On 07/24/2007, UCE contacted Adams via telephone. During the call, UCE and Adams discussed the process by which UCE could set up and pay for the smuggling of contraband to CW1. Adams provided UCE with a list of services she offered, and payment for those services. For example, when asked how much she charged for various items, Adams replied "candy $200, cigarettes, a carton $200, and a cell phone is $250." Based on his experience, Affiant believes "candy" is actually slang for drugs. The call was consensually recorded.

10. On 07/27/2007, UCE and Adams spoke via telephone. During the call, UCE and Adams negotiated the amount of the bribe that Adams and Marshall would be paid for smuggling cigarettes and cash to CW1. UCE asked Adams to smuggle in $100 in cash to CW1, in addition to a carton of cigarettes. Adams responded that she normally charged an extra $50 for this, but offered to charge only $25 after UCE complained that UCE was not advised about an additional charge. The call was consensually recorded.

11. On 07/31/2007, UCE and Adams spoke via telephone. During the call, UCE and Adams made plans to meet to complete the transaction on 08/02/2007. The call was consensually recorded.

12. On 08/02/2007, UCE and Adams met in the parking lot of McDonald's at the intersection of New York Avenue and First Street NE, Washington, DC. The meeting was surveilled and recorded via both audio and video. During the meeting, UCE provided to Adams $325 in cash in the following denominations: six $50 bills, one $20 bill, and one $5 bill. Of the money provided to Adams, $225 was to be used to purchase a carton of cigarettes that would be delivered to CW1, with the remainder of the money (approximately $180, depending on the exact cost of the cigarettes) serving as a bribe for Marshall and Adams. The bribe was in return for Adams and Marshall delivering $100 in cash and a carton of cigarettes to CW1.

13. On 08/06/2007, Marshall delivered 10 packs of cigarettes and two $50 bills to CW1 inside the DCJ. The cigarettes Marshall delivered to CW1 were in their original packaging. Marshall put gray duct tape around the cigarette packs. Of the 10 packs

    Marshall provided to CW1, four pairs were taped together with duct tape; the remaining two packs were loose. On 08/07/2007, CW1 provided to the affiant the two $50 bills and one of the packs of cigarettes that Marshall smuggled in for CW1. The serial numbers of the two $50 bills matched those of two of the bills that UCE provided to Adams.

14. On 08/17/2007, UCE and Adams met in the parking lot of McDonald's at the intersection of New York Avenue and First Street in Northeast Washington, DC. During the meeting, UCE provided to Adams one $50 bill, a 32" LCD television that was still in its original packaging, and an Ipod Nano. UCE advised Adams that the television set was stolen property. The $50 and LCD television set were a bribe payment for Adams and Marshall for smuggling the Ipod and a carton of cigarettes in to CW1. During a recorded conversation between Adams and UCE while the exchange was being made, Adams told the UCE that she was keeping the television set for herself.

15. After meeting with the UCE, Adams returned to her residence at 601 Edgewood Street NE. There, she was observed and photographed meeting with Marshall. FBI agents then observed Adams and Marshall unload the LCD television, still in its original packaging, from Adams' car. Marshall carried the television set up the ramp and into Adams' apartment building, while Adams walked beside him.

16. On 08/19/2007, Marshall told CW1 that he had "stuff" to deliver to CW1. CW1 understood this to mean the Ipod and another carton of cigarettes, per the second transaction between UCE and Adams.

17. On 08/20/2007, Marshall and CW1 discussed the LCD television that UCE gave to Adams. Marshall told CW1 that Adams would keep that set. However, Marshall indicated that he wanted a second television set for himself. Marshall also told CW1 that he would deliver everything, meaning the Ipod and a carton of cigarettes, to CW1 the following day.

18. On 08/21/2007, a drug dog "hit" on a locker at the DCJ that was believed to be used by Marshall. When Corrections Officers opened the locker, they discovered a cell phone and charger, which are considered contraband. Marshall was subsequently put on administrative leave. This occurred before Marshall was able to deliver the Ipod and second carton of cigarettes to CW1. The location and disposition of the Ipod is unknown.

19. On 08/21/2007, CW1 and Marshall spoke via telephone. During the call, Marshall told CW1 he would see CW1 the next day, and would deliver the items to CW1 then.

20. On 08/22/2007, UCE and Marshall spoke via telephone. During the call, UCE said he/she heard that Marshall had not delivered the Ipod to CW1. Marshall acknowledged that he had not delivered it, and said he was not sure if he would be able to deliver it to CW1. The call was consensually recorded.

### Summary

21. In summary, Adams and Marshall are involved in a scheme to demand and accept bribes to Marshall, a public official (in this case, Corrections Officers) in exchange for smuggling of contraband into the DCJ. On two occasions, Adams accepted money and/or things of value from an FBI UCE in return for arranging the delivery of contraband through Marshall to an inmate incarcerated in the DCJ. Adams presumably provided some portion of the money and/or things of value to CO Dana Marshall in return for Marshall actually smuggling contraband into the DCJ and delivering it to an inmate.

22. WHEREFORE, the undersigned requests a arrest warrant for Dana E. Marshall for a violation of Title 18, United States Code, Sections 371 and 201(Conspiracy to Commit Bribery of a Public Official).

_____
Affiant: Andrew Sekela
Federal Bureau of Investigation

Subscribed and sworn to before
me on August \_\_\_\_, 2007

_____
UNITED STATES MAGISTRATE JUDGE