## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No.:**07-247** |
| | : | (RBW) |
| | : | |
| **DANA E. MARSHALL** | : | |
| | : | |
| Defendant(s). | : | |

## GENERAL ORDER GOVERNING CRIMINAL CASES
### (JUDGE WALTON)

All courtroom proceedings, unless otherwise indicated, will be conducted in courtroom 5 of the E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001.

Judge Walton's permanent staff consists of Ms. Melissa D. Williams, Career Law Clerk, (202) 354-3290; Mrs. Mattie Powell-Taylor, Courtroom Deputy Clerk (202) 354-3184; and Ms. Phyllis Merana, Court Reporter (202) 273-0889. One of Judge Walton's three law clerks will be assigned to this case, and the name of the assigned law clerk can be obtained from Ms. Williams.

To facilitate the expeditious, efficient and fair resolution of this matter, it is **ORDERED** that counsel comply with the following directives:

(1)    **COMMUNICATIONS WITH THE COURT**:

Counsel should endeavor to keep communications with chambers to a **minimum**. Counsel are advised that chambers staff **may not** provide legal advice of any kind. *Ex parte* communications on matters other than scheduling matters are prohibited. Communications with the court concerning scheduling

matters should be directed to the Courtroom Deputy Clerk.  If counsel absolutely

needs to contact chambers, it should be done through a telephone conference

with the law clerk who is assigned to this case.

(2)     **RESCHEDULING OF CANCELLED PROCEEDINGS:**

In the event the Court is closed or the opening time for the start of the

Court's day is delayed due to inclement weather or an unforeseen emergency,

cases that were scheduled to be heard during the times when the Court was

closed will be rescheduled by the courtroom deputy.

(3)     **PUNCTUALITY:**

Counsel is expected to be punctual for all court proceedings.  Defense

Counsel will also advise the defendant, if he/she is on pretrial release, of his/her

obligation to appear in court in a timely manner, and government and defense

counsel shall advise their witnesses of their obligation to be punctual at

proceedings they are required to attend.

(4)     **CIVILITY:**

Counsel are expected to treat each other and those involved in the case

with dignity, respect and civility, both in court and in out-of-court conferences,

meetings and discovery proceedings.  Counsel are expected to advise their client

and witnesses of this mandate of the court.

(5)     **MOTIONS FOR EXTENSION OF TIME:**[1]

The court expects parties to work within the time frames designated by the

---

[1] The court will not entertain stipulations concerning extensions of time.  Parties must file a motion when seeking an extension.

2

court's orders. Parties should not expect the court to grant extensions, absent a showing of good cause.  Absent a last minute emergency that necessitate the need for an extension, any motions for an extension of time shall be filed at least **four** business days prior to the deadline the motion is seeking to extend.  All motions for an extension, regardless of when it is filed, **must** include the following (otherwise they will not be considered by the court):

> (a)    how many, if any, previous extensions of time the court has granted to each party;

> (b)    the specific grounds for the motion;

> (c)    a statement about the effect the court's granting the motion will have on all other previously scheduled deadlines;

> (d)    the period of time the extension is requesting; and,

> (e)    the moving party shall include a statement of opposing counsel's position regarding the motion.

(6)    **GUILTY PLEA HEARINGS:**

**At least two days in advance of the hearing,** counsel shall submit to the court the following documents:

> (a)    the written plea agreement or an outline of the agreement if it has not been reduced to writing;

> (b)    the elements for each offense to which a guilty plea will be entered;

> (c)    the factual proffer the defendant is prepared to acknowledge;

> (d)    a statement of all potential penalty consequences of the plea; and

> (e)    written notice as to whether the defendant will be pleading guilty to

an "aggravated felony" as defined by 18 U.S.C. § 1101(a), which

would subject the defendant to mandatory deportation if the

defendant is not a United States citizen.

(f)    any superseding indictment or new information, if applicable.

(7)    **DISCOVERY MOTIONS**:

The court requires counsel to confer and attempt to resolve all discovery

disputes informally.  If counsel must file a motion pertaining to a discovery

matter, the motion **must** comply with **Local Criminal Rule 16.1.**

(a)    **BRADY/GIGLIO EVIDENCE:**[2]  If defense counsel believes that the

defense is entitled to pretrial disclosure of Brady/Giglio material and

the government has not complied with its obligations to produce

such material, defense counsel should immediately file a motion

requesting that the court order the production of such evidence.  In

the event a motion for the production of Brady/Giglio evidence is

filed, the court will forthwith convene a hearing during which it will

ascertain whether such evidence exists, and if so, when it must be

produced.  Failure to file a motion despite defense counsel's belief

that the defense is in need of pretrial disclosure of Brady/Giglio

evidence to effectively prepare and present a defendant's case, will

weigh heavily against a request by a defendant for a continuance

on the eve of trial based on the untimely disclosure of Brady/Giglio

---

[2] This provision of this Order does not encompass the government's disclosure obligations covered by the Jencks Act, 18 U.S.C. § 3500.

evidence by the government.[3]

In any event, the government is required to provide to the defendant <u>Brady/Giglio</u> evidence "at such a time as to allow the defense to use the favorable material effectively in the <u>preparation and presentation of its case</u> ... "<u>United States v. Pollock</u>, 534 F.2d at 973 (emphasis added). If the government believes that such disclosure should not occur sufficiently in advance of a defendant's opening statement so as to afford defense counsel the opportunity to incorporate the <u>Brady/Giglio</u> material into the defendant's opening statement, government counsel must advise the Court of the reason(s) for the non-disclosure so the Court can determine when disclosure shall occur. The timing of the disclosure in such situations will be determined by the Court based on the individual circumstances of the particular case.

(8)   Counsel shall notify the Courtroom Deputy Clerk at least ten days in advance of any status conference, motions hearing, plea or trial if the defendant or any witness will require interpretive services provided by the Court.

(9)   <u>**WITNESSES AND FIFTH AMENDMENT ISSUES**</u>:

As soon as counsel becomes aware that a potential unrepresented witness has a Fifth Amendment problem, counsel <u>shall</u> immediately advise the Court of the situation, so that legal counsel can be appointed to provide legal

---

[3] <u>See generally</u> <u>United States v. Wilson</u>, 160 F.3d 372, 741-42 (D.C. Cir. 1998); <u>United States v. Pollock</u>, 534 F.2d 964, 973-74 (D.C. Cir. 1976); <u>United States v. Edelin</u>, 128 F. Supp. 2d 23, 38-39 (D.D.C. 2001).

advice to the witness.  Such notification may be presented to the Court ex parte.

(10)  **TRIAL PROCEDURES:**

The sole reason for the following directive is to ensure that trials tried

before this court are conducted in a fair, efficient and dignified manner.  They are

not designed to bring about a rigidly formalized trial process.  The court will

attempt, with the full cooperation of counsel, to conduct trials in a fashion that

achieves the above objections in a congenial environment.

(a)  **PRELIMINARY INSTRUCTIONS**:  After the jury is selected and

sworn, the court will give preliminary instructions to the jury.  These

instructions will generally include a description of the trial process,

the responsibilities of the participants, the burden of proof,

elements of the offense(s), the daily trial schedule, procedures

governing juror note taking and the duty not to discuss the case

with anyone until deliberations begin.  If counsel desire that any

additional preliminary instructions be given, they should make that

request in the Joint Pretrial Statement.

(b)  **TRIAL SCHEDULE:**  The jury portion of the trial will be conducted

each trial day from approximately 9:30 a.m. to approximately 12:30

p.m. and from 1:45 p.m. to approximately 5:00 p.m. on Mondays

through Thursdays, unless counsel are notified otherwise.  The trial

will convene promptly at the designated times on each trial day.

Counsel shall be available in the courtroom **at least five minutes**

**before court is scheduled to begin or resume.**

(c)   **NOTE TAKING BY JURORS**:  Unless indicated otherwise by the court, jurors will be permitted to take notes in notebooks which the court will provide.  The jurors will be given a preliminary instruction about note taking.  During recesses, jurors will be required to leave their notebooks in the courtroom on their seats.  At the end of each day, the notebooks will be collected by the clerk, and will be placed back on the jurors' seats at the commencement of the trial on the following day.  At the end of the trial, the jurors will be permitted to take their notebooks to the jury room for use during deliberations.  At the end of deliberations, any notes taken by jurors will be destroyed.

(d)   **OPENING STATEMENTS**: Except for especially complex cases, or otherwise authorized by the court, opening statements shall be limited to no more than thirty minutes per side.  Counsel will be admonished by the court should their opening statements stray into forbidden argument, as opposed to a straightforward statement of what the evidence will show.  Counsel is expected to object if improper statements are made by opposing counsel.

(e)   **GENERAL COURTROOM RULES**:  **The court expects counsel to exercise civility at all times towards everyone related to the case or working with the court.**

   1.   Counsel shall remain at the lectern when addressing the jury or when interrogating a witness, unless counsel uses either the handheld or the lapel microphone.  The handheld and

the lapel microphone shall never be removed from the courtroom.

2.    Counsel shall obtain permission from the court before approaching an adverse or hostile witness if, for example, counsel desires to show a witness a document.

3.    Counsel are reminded that the court will enforce the traditional rules regarding opening statements and closing arguments, e.g., no personal opinions, no personal attacks on opposing counsel.

4.    All objections or other statements by counsel shall be made while standing.

5.    All statements by counsel must be directed to the court and not to opposing counsel, unless permission is obtained from the court to address other counsel.

6.    Counsel are reminded to secure leave from the court before posing questions or engaging in procedures, in the presence of the jury, that carry a risk of undue prejudice, or that by law or customary procedures require judicial pre-approval.

7.    During the interrogation of witnesses, counsel shall refer to all witnesses under interrogation, including his or her clients, as "Mr." or "Ms."  The use of first names or nicknames is prohibited.

(f)    **MOTIONS IN LIMINE**: The parties are expected to file any such

motions in accordance with the Court's scheduling order that is issued in the case.  Such motions will be decided either on the papers, when possible, or after a hearing, if the Court decides that a hearing is necessary.  The Court expects counsel to file motions in limine regarding any issues that they believe will be contested at trial.  If another issue does not become apparent to counsel sufficiently in advance of a scheduled motions hearing for a written motion to be filed, counsel shall contact the Court's chambers for instructions regarding how the matter should be handled.  Any issues that arise after the trial has begun shall be handled according to the procedures set forth in paragraph (8)(d) of this Order.

(g)    **NEW ISSUES NEEDING COURT RULINGS**:  Each party must notify the court and the other parties in writing by 7:00 a.m. each day of any issues that the party will ask the court to resolve before or during that day of trial.  The parties must send such notice to the court and other counsel by facsimile, email[4] or by hand delivery.  Judge Walton's facsimile number is (202) 354-3292.  The opposing party or parties must submit their response, if any, by 8:00 a.m. to the court and to all parties.  Such response will be submitted by facsimile, email or hand-delivery as indicated above.

---

[4]All submissions made to Judge Walton's chamber's by email shall be addressed to melissa_williams@dcd.uscourts.gov, unless otherwise directed by the court.

9

<u>The parties are encouraged to submit these objections and</u>

<u>responses on the evening preceding the next trial day</u>

<u>whenever possible</u>.

(h)    **OBJECTIONS AT TRIAL**:  Counsel who lodge objections before a

jury must state merely the legal basis for their objections, <u>i.e.</u>,

hearsay; relevancy, etc., without elaboration or argument, and the

court <u>shall</u> rule on the objection without additional discussion

whenever possible.  Bench conferences are discouraged.  For

purposes of "protecting the record" for appellate review, counsel

may explain or amplify their objections, on the record, after the jury

has been excused for a break, lunch or at the end of the day.

However, counsel may request an immediate bench conference if

counsel believes it is absolutely necessary to do so to avoid an

injustice or reversible error.

(i)    **WAIVER OF DEFENDANT'S PRESENCE AT BENCH**

**CONFERENCES**: Unless the defendant desires to be present for

bench conferences, defense counsel shall secure a written waiver

from the defendant of his/her right to be present at bench

conferences during trial and file the same with the court by 9:00

a.m. on the morning of trial.

(j)    **VOIR DIRE**:  The court's voir dire and jury selection practices are

attached to this Order as addendum one.

(k)    **EXHIBIT LISTS**: Unless otherwise indicated by the court, all

government exhibits are to be marked numerically in advance of trial and the written list of the exhibits along with a brief description of each exhibit must be submitted to the court and defense counsel at least 3 days before the trial commences. Defense counsel shall follow the same procedure and must make his/her written list of exhibits available to the prosecutor and the court at the beginning of the defense case.

(l)    **JENKS ACT**: Government and defense counsel are encouraged to disclose Jencks Act statements to opposing counsel sufficiently in advance of a witness' direct examination so as to give opposing counsel the opportunity to review it and avoid the necessity of a recess after the completion of the witness' direct testimony. The proponent of a witness shall also have available for testimony individuals who heard or recorded Jencks or reverse Jencks statements in the event opposing counsel needs the testimony of such individuals to complete the impeachment of a witness who is cross-examined with a Jencks qualified statement.

(m)    **TECHNICAL EQUIPMENT**:  Counsel who wish to use technical equipment during the trial to present exhibits (e.g., x-ray view boxes, video display monitors, overhead projectors, etc.) must make their own arrangements for the presence and operation of the equipment. Questions

concerning the use of technical equipment should be directed to the Court's Deputy Courtroom Clerk.

(n)    **RULE ON WITNESSES**:  Except for the parties or their representatives, all witnesses shall remain outside the courtroom except while testifying.  Counsel shall instruct witnesses not to discuss their testimony after they leave the witness stand, both during and after the completion of their testimony.  Except for a criminal defendant-witness (because of Sixth Amendment implications), counsel calling a witness to testify shall have no further discussions with that witness concerning any aspect of the testimony already given or anticipated after the witness has been tendered for cross examination and until such time as the witness has been tendered back for redirect examination.  Persons who are assisting or associated with the attorney who calls a witness (*e.g.*, law enforcement officers and defense investigators) will also abide by these constraints.  Regarding defendants who decide to testify, counsel are directed to the District of Columbia Circuit's opinion in *United States v. McLaughlin*, 164 F.3d 1, 4-7 (D.C. Cir. 1998), *cert. denied*, 119 S. Ct. 1485 (1999).

(o)    **PLACING WITNESSES ON CALL**:  Once the trial begins, witnesses shall be put on call at the peril of the calling party.

12

The trial will <u>not</u> be recessed because a witness who is on call is unavailable, except in extraordinary circumstances. The court will endeavor to accommodate witnesses with special problems, *e.g.*, employment and child care, and out-of-town and expert witnesses, if counsel alerts the court ahead of time of the situation.  The party calling a witness shall arrange for that witness' presence until cross-examination is completed.  The failure to have a witness present for cross-examination following direct examination is grounds to strike the witness' testimony.

(p)     **PRESENCE OF COUNSEL**:  Once court is in session, lead counsel shall not leave the courtroom without the court's express permission.

(q)     **SUA SPONTE JURY INSTRUCTIONS**: The necessity for a <u>sua</u> <u>sponte</u> jury instruction shall be raised by the party seeking the instruction at the earliest possible time.  Failure to do so may be deemed to constitute a waiver of any such request.  In the event the instruction is given, it shall be counsel's responsibility to remind the court of the necessity for inclusion of the <u>sua</u> <u>sponte</u>  instruction in its final charge.  Counsel shall do so by 4:00 p.m. of the evening prior to the day the jury is to receive the final charge from the court.

(r)     **QUESTIONS BY JURORS**:  After all counsel have

completed their examinations of a witness, jurors will be permitted to submit questions to the witness pursuant to the following procedure:

(A) During the court's preliminary instructions, jurors will be told that they will be permitted to submit <u>written</u> questions to the court after counsel have completed their examination of a witness. The court's preliminary instructions will also include an admonition to the jury that if they decide to ask a question, that they should do so as a neutral judge of the facts and not as a partisan advocate for one side or the other. Moreover, the jurors will be told that the court may not be able to ask a witness a proposed question for legal reasons and that if that occurs, the jurors must act as if the question was never submitted to the court and they cannot speculate about what the answer would have been.

(B) When a written question is submitted by a juror, the question will be reviewed by the court with counsel, who will be given the opportunity to lodge any objections. The court will either sustain the objection and not submit the question to the witness or overrule the objection and submit the question to the witness through the court.

(s)    **<u>VERBAL OR FACIAL CONTACT WITH THE JURY</u>**:

14

Counsel (government and defense) and the defendant shall remain seated when the jury is entering or leaving the courtroom, and shall not make <u>any verbal, facial or other contact with the jury that would be interpreted as conveying a comment related to the circumstances or developments of the trial</u>.

(t)    **DIRECT AND CROSS-EXAMINATION**:  On direct or cross-examination of a witness, counsel shall not:

1.  in effect personally present testimony by improperly incorporating facts into their questions so as to put before the jury information that has not been received into evidence;

2.  use an objection as an opportunity to argue or make a speech in the presence of the jury;  or

3.  show the jury a document or anything else that has not yet been received into evidence without leave of the court.

(u)    **<u>COUNSEL WILL NOT BE AFFORDED RE-CROSS EXAMINATION, ABSENT EXTRAORDINARY CIRCUMSTANCES</u>.**

(v)    **<u>CLOSING ARGUMENTS</u>**:  In making closing arguments, counsel shall be limited by the evidence presented during trial and are reminded of the prohibition against appealing to

the jurors' prejudices.  Moreover, during closing arguments and throughout the trial, counsel **SHALL <u>NOT</u>**:[5]

1.    comment adversely on the failure of any defendant to testify on his or her own behalf;

2.    make statements of personal belief to the jury;

3.    make personal attacks on other counsel in the case;

4.    appeal to the self interest of the jurors;

5.    make potentially inflammatory racial, political, or religious comments;

6.    state any personal opinions concerning the credibility of witnesses or that imply personal knowledge of the witnesses' credibility;

7.    argue inferences from matters that are not in evidence or that have been excluded, or argue facts not in evidence;

8.    allude to the appellate processes

9.    make any remarks likely to invoke the jury's sympathy or to excite the jury's prejudice and passions;

10.   make any statement regarding the consequences of the jury verdict, including any "**messages to society**" by the verdict or the potential punishment for the crime; or

11.   make any "golden rule" type argument; for example, the government shall not ask members of the jury to place

---

[5] Counsel should be mindful that should they engage in the activity described, the court may impose a <u>sua</u> <u>sponte</u> objection.

themselves or one of their relatives in the shoes of the

victim, and the defense counsel shall not ask any one of the

jurors to place themselves or one of their loved ones in the

shoes of the defendant.

12. play the race card where there is nothing in the record that

warrants race being raised as an issue.

(w)     Before deliberations commence, counsel shall make

available to the Court photographs of their witnesses, which

will be made available to the jury during its deliberations to

assist in helping the jurors remember the witnesses.

(x)     **FINAL JURY INSTRUCTIONS**: The court will tape record its

instructions and the tape recording of the instructions along with a

written copy of the instructions will be sent to the jury room with

the jury when they commence their deliberations.

Proposed instructions submitted by counsel shall the instructions

contained in the most recent addition of the Criminal Jury

Instructions for the District of Columbia.  If any other version of the

proposed instructions are submitted counsel shall specifically

advise the court of this fact in a separate filing.

(y)     **ALTERNATE JURORS:** Although alternate jurors will be excused

prior to deliberations, they must remain available to join the

deliberations in the event deliberating jurors cannot continue to

participate in the deliberations.  Accordingly, counsel may not

17

speak or have contact with the alternates until after a verdict has
been returned.

(z)     **DELIBERATIONS**: The court will send to the jury at the beginning
of deliberations all admitted exhibits, the written and tape recorded
jury instructions, and any verdict form and special interrogatories
that the court has decided to use.  In addition, jurors will be able to
take their notebooks with them if note taking has been permitted.
Throughout jury deliberations counsel must be available on twenty
minutes notice in order for the court to expeditiously respond to
any jury notes or a verdict.  Counsel who choose not to remain in
the immediate vicinity of the courtroom must provide the clerk with
a telephone number where they can be contacted.

Unless counsel object, the jury will not be brought into the
courtroom to be excused at the end of the day, nor for resumption
of deliberations when it returns the following day.  Instead, the
courtroom clerk will excuse the jury from the jury room at the end
of the day and collect all exhibits, notebooks, and verdict forms.
These items will be returned to the jury room when the jury returns
the next morning to continue its deliberations.

Although counsel is permitted to question jurors about the case
and the verdict after deliberations have been completed, they
cannot do so in a manner that is intimidating, insulting or critical.

(9)     **SENTENCING:**

Immediately upon receipt of the presentence report, counsel must review it and advise opposing counsel and the probation officer that he/she intends to raise objections to the report.  If the objection made to the probation officer is not resolved, counsel must then reduce the objections to writing and file the objections with the court and serve opposing counsel and the probation office with the pleading.  If the objection process is going to interfere with the scheduled sentencing date, counsel shall file a motion with the court requesting a continuance.

If counsel intends to submit a written memorandum in aid of sentencing, counsel shall file it with the court and serve it on opposing counsel at least 5 days before the scheduled sentencing date.  If counsel will be unable to comply with this time requirement because the presentence report was recently received, counsel must immediately file a motion seeking a continuance of the sentencing hearing.

**SO ORDERED** on this 2nd day of October, 2008.


_____/s/_____
Reggie B. Walton
United States District Court Judge


Copies to:

Addendum 1

## Jury Selection Process in Criminal Cases
## Assigned to Judge Walton

(1.)  Proposed voir dire questions must be submitted to the Court at least **seven**

days before the scheduled trial date in writing and on a 3.5 inch, high density

disk, formatted for IBM compatible computers, in Microsoft Word or WordPerfect.

The parties may also send a copy of the proposed voir dire questions by email to

melissa_williams@dcd.uscourts.gov.  Failure to comply with this requirement will

be deemed a waiver and/or sanctions will be imposed if the Court decides to

entertain untimely voir dire requests.

(2.)  The determination of how many peremptory challenges each party will have

will be determined at the final pretrial conference based on Fed. R. Crim. P. 24(b)

and (c).

(3.)  When the trial is ready to proceed, the court will discuss with counsel the

proposed  voir dire questions and decide what questions will be asked.

(4.)  An appropriate number of potential jurors will then be obtained from the Jury

Office when the selection process is ready to proceed.

(5.)  When the jury arrives from the Jury Office, counsel will be provided with the

written list of the venire.

(6.)  The jurors will be seated in the courtroom by the courtroom deputy clerk in

the order in which they appear on the jury list.  The seating arrangement will start

with the first juror being placed in the seat next to the wall on the first row of

seats located on the right side of the courtroom as viewed from the bench looking

toward the rear of the courtroom.  Subsequent jurors will be seated in sequential

order as listed on the jury list on the first row until all seats are occupied. Thereafter, jurors will be seated in the same manner on additional rows until all jurors are seated.  The same seating arrangement will be employed on the left side of the courtroom if that space is needed to seat the entire venire.

(7.)  Once all of the jurors are seated, they will be placed under oath and the judge will make a statement about jury service and its importance.  The judge will then ask the jurors collectively the voir dire questions the court agreed to ask the venire.  After each question, those jurors who have affirmative answers will be required to stand and indicate only their individual juror numbers so that the need to obtain further responses from them to the various questions to which they need to respond can be noted.

(8.)  After all of the voir dire questions have been asked and the numbers of the jurors who have affirmative responses have been recorded, the entire venire will be taken to another courtroom with instructions that they should not discuss the case or the voir dire questions until they are individually returned to the courtroom for further questions. The jurors who had an affirmative response will then be returned to the courtroom for individual questioning by the judge and counsel.  In addition, jurors who failed to indicate that they had responses to any of the questions that were asked will be returned individually to the courtroom for individual questioning because in this judge's experience jurors do not always respond when they should in a group setting, but do indicate that they have responses when they are questioned individually.[6]

---

[6]In the event another courtroom is not available to house the venire when the individual questioning is conducted, the individual inquiries will be conducted in the Court's jury room.

(9.)  Strikes for cause will be entertained immediately after the individual questioning of each juror.

(10.)  Depending upon the number of alternate jurors the court decides to empanel, the 12 non-alternate jurors and the alternates will be placed in the jury box in designated seats.  Specific seats will have been assigned for the alternates but their identities as alternate seats will only be made known to counsel and their clients.  Concealment of the alternate jurors' identities will be maintained until the jury is ready to commence deliberations.

(11.)  During the six rounds of peremptory strikes on the non-alternate jurors, the government on each round will exercise its strikes first, followed by the defendant who on rounds one through four will exercise two strikes, and on the last two rounds one strike.  The parties are permitted to strike jurors in the venire who were not placed in the jury box; however, strikes on the yet to be seated jurors can only be exercised against those potential jurors who actually have the potential of being empaneled if both sides were to exercise all of their strikes.  A pass by either party counts as a strike.  If the government fails to exercise a strike on a round and the defendant also fails to exercise a strike on that same round, the peremptory striking process on the non-alternates will be deemed completed.  In codefendant cases an alternative process concerning passes will be devised based upon the number of codefendants.

(12.)  In the event there are multiple defendants in a case, when practicable, each defendant will be provided with an equal number of peremptory strikes. The order in which strikes will be exercised on the non-alternate jurors will start with the government followed by the defendants exercising one strike each

during the first six rounds (unless the defense is awarded more than ten

challenges) in the order previously designated either by agreement of the

defendants or as designated by the court if an agreement cannot be reached as

to which defendant will proceed first.  On the final four rounds of peremptory

strikes on the non-alternate jurors, the government will proceed first followed by

one of the defendants on each of the last four rounds exercising their strikes in

the order as designated above.

(13.)  In a single defendant case, peremptory strikes on the alternate juror(s) will

be exercised by the government proceeding first on each round, followed by the

defendant.  In codefendant cases, when practical, each defendant will be given

an equal number of peremptory strikes for the alternate jurors.

(14.)  Jurors who were stricken will not be excused from the courtroom until the

entire selection process has been completed, including the resolution of any

Batson[7] challenges.

(15.)  In the event a Batson challenge is raised and found to be meritorious,

counsel are forewarned that one remedy the court may employ is to impanel the

improperly stricken juror on the jury and preclude the party who improperly

exercised the strike from excluding that juror.  An array of other remedies are

available to the court, including the imposition of monetary sanctions, to address

Batson violations.  Counsel should therefore be mindful of their obligation not to

exercise peremptory challenges that seek to exclude jurors for racial or gender

reasons.

---

[7] Batson v. Kentucky, 476 U.S. 79 (1986).